UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

Charles P. Guarino, Esq.
Nicoll Davis & Spinella, LLP
95 Route 17 South, Suite 203
Paramus, New Jersey 07652
(201) 712-1616
Attorneys for Plaintiff N.V.E., Inc.

| | | |
|---|---|---|
| N.V.E., INC., | : | Civil No. 2:08-cv-02206-SRC-MAS |
| Plaintiff, | : | Civil Action |
| vs. | : | (*Electronically Filed*) |
| INNOVATION VENTURES, LLC, d/b/a LIVING ESSENTIALS, | : | |
| Defendant. | : | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## PRELIMINARY STATEMENT

Plaintiff N.V.E., Inc. ("NVE") herein opposes Defendant Innovation Ventures, LLC d/b/a Living Essentials ("Living Essentials") motion to this Court to dismiss, transfer, or stay plaintiff N.V.E., Inc.'s ("N.V.E.") action for violation of the federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125 ("ACPA") in light of a previously filed trademark infringement action (Eastern District of Michigan Case No. 08-cv-11867), on the grounds that Living Essentials (1) has unclean hands in this matter, and (2) that its prior filing constitutes an anticipatory lawsuit instituted in bad faith.

## STATEMENT OF FACTS

NVE is the manufacturer of, *inter alia*, the famous STACKER 2 line of nutritional supplements, and more recently, the nationally-advertised 6 HOUR POWER line of extreme energy shots. Energy shots are nutritional supplement drinks packaged in two to four ounce plastic bottles.

In connection with this product line, NVE owns the 6 HOUR POWER trademark, which it has used since at least January 2006. NVE applied for registration of its 6 HOUR POWER! trademark on the Principal Register of the United States Patent and Trademark Office ("US-PTO") under U.S. Trademark Serial No. 77/089,643. After examination by the US-PTO found that there was no confusingly similarity between NVE's mark and any existing trademark registration (including that belonging to Defendant), the application was published for opposition on February 19, 2008.

Since its introduction, the 6 HOUR POWER mark has been prominently displayed on

Plaintiff's products, packaging, promotional material, advertisements and catalogues. NVE's 6 HOUR POWER mark has been extensively promoted by NVE to its customers through various forms of national media, including television, radio, print, and the internet. The 6 HOUR POWER mark distinguishes NVE as the source of these products, is inherently distinctive, and has also become distinctive through the acquisition of secondary meaning.

On April 22, 2008, NVE discovered that the domain names *sixhourpower.com* and *6hourpower.com*, which they had been looking to register and use for their 6 HOUR POWER product, had been previously registered by Defendant. Through counsel, NVE immediately contacted Living Essentials' counsel regarding this matter on April 22, 2008. Living Essentials' counsel claimed that it would contact Living Essentials regarding the domain name cybersquatting and trademark opposition matters, and call back to discuss these matters.

After several telephone calls, NVE's counsel subsequently spoke with Living Essentials' counsel on May 1, 2008 regarding the potential settlement of both the domain name cybersquatting and trademark opposition matters. NVE's counsel was assured that Living Essentials' counsel would contact Living Essentials regarding these issues and call back early the following week to discuss the possible settlement of the outstanding issues.

Having led NVE to believe that the parties were working in good faith towards settlement, Defendant Living Essentials immediately turned about and filed an anticipatory suit in bad faith for trademark infringement in the U.S. District Court for the Eastern District of Michigan on May 1, 2008, the very same day of the most recent settlement discussion. After being notified of the Living Essentials filing the following Monday, May 5, 2008, NVE filed a complaint in the instant action the next day, May 6, 2008, alleging violations of the federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

In addition, it has since come to NVE's attention that Defendant Living Essentials was aware of the spurious nature of the trademark infringement claim it filed against NVE in its anticipatory Michigan lawsuit. Two weeks prior, on April 14, 2008, a decision was handed down by the Hon. Paul Borman of the U.S. District Court for the Eastern District of Michigan in Case No. 08-CV-10983, <u>Innovation Ventures, LLC d/b/a Living Essentials v. N2G Distributing, Inc. and Alpha Performance Labs</u>, denying injunctive relief to Living Essentials on a nearly identical trademark infringement claim. The Court's opinion denied Living Essentials' motion for preliminary injunction on the ground of trademark infringement, stating that Living Essentials had failed to show a "strong likelihood of success" on its claim that defendants' 6 HOUR ENERGY mark infringed upon Living Essentials 5 HOUR ENERGY mark. A copy of this Opinion is attached hereto as Exhibit A.

## ARGUMENT

**A.    Living Essentials' Motion Should Be Denied Because it Has Unclean Hands.**

Living Essentials' motion to dismiss asks this Court to engage in the equitable balancing of factors under <u>Jumara v. State Farms Insurance Company</u>, 55 F.3d 873 (3d Cir. 1995). Living Essentials comes before this Court, however, with unclean hands that should act to bar the requested relief. <u>Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.</u>, 324 U.S. 806 (1945). Living Essentials' unclean hands are evident from the pattern of conduct surrounding its anticipatory bad faith filing of its trademark infringement suit in the Eastern District of Michigan. Living Essentials' unclean hands and inequitable conduct goes to the heart

of its motion to dismiss, namely whether the first-to-file rule may be invoked in its favor. Given such unclean hands, the Court should deny Living Essentials' request for relief.

**B.     The First-To-File Rule Should Not be Applied Where Defendant's Filing is an Anticipatory Lawsuit Filed in Bad Faith.**

While the "first-to-file" rule is well-established, there are a number of circumstances in which courts may depart from the rule. Such circumstances include bad faith on the part of the party who filed first, forum-shopping by that party, and inequitable conduct which defeats the purpose of the rule. One World Botanicals, Ltd. v. Gulf Coast Nutritionals, Inc., 987 F.Supp. 317, 328 (D.N.J. 1997).

Defendant Living Essentials has acted in a manner which appears to fall within the exceptions to the first-to-file rule. First, the bare and pro forma nature of Living Essentials' complaint in its trademark infringement filing with the Eastern District of Michigan court evidences the fact that Defendant filed its Michigan action in anticipation of NVE's filing of its Anti-Cybersquatting Consumer Protection Act claim in the District of New Jersey, where NVE is headquartered. Living Essentials' conclusory complaint is an anticipatory filing made in bad faith.

Additional evidence of Living Essentials' bad faith is shown by the actions of Living Essentials' counsel in this matter. As described in the attached Certification of Charles P. Guarino, counsel filed Living Essentials' anticipatory trademark infringement complaint with the federal court in Michigan on May 1, 2008, the very same day on which he told NVE's counsel that he would contact his client to discuss resolution of the matters between the parties and get back to NVE's counsel early the following week.

The anticipatory filing exception to the first to file doctrine was created to serve the interests of judicial economy by protecting the public policy interest in promoting the settlement of legal disputes. Rigid application of the first-to-file doctrine would discourage parties from engaging in settlement discussions prior to filing suit, for fear that an adversary might "exploit the first to file rule by securing a venue that differs from the one that the filer's adversary would be expected to choose. Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit. Otherwise, potential plaintiffs would be discouraged from first attempting to resolve their claims without resorting to litigation." Ontel Products, Inc. v. Project Strategies Corp., 899 F.Supp. 1144 (S.D.N.Y. 1995); see also Elbex Video Ltd. v. Tecton Ltd., 2000 WL 1708189 (S.D.N.Y.).

Defendant Living Essentials took advantage of NVE's interest in pursuing settlement to lull NVE into holding off on filing its Anti-Cybersquatting Consumer Protection Act claims with the New Jersey federal court, by leading NVE to believe on or about May 1, 2008 that Living Essentials's counsel would call NVE's counsel back during the week of May 5, 2008 to discuss the possibility of settlement. Instead, Living Essentials immediately filed its own bare, pro forma trademark infringement complaint in Michigan to attempt to unfairly dictate the venue in the parties' dispute.

Faced with a similar factual pattern, other courts have held the filing was anticipatory and that the first to file rule would not be applied. The following quote from Eblix Video is instructive: "Had Elbex had an indication that Tecton was not serious about negotiating it seems obvious that it would have filed its complaint in this case first. The facts indicate that Elbex is

the true plaintiff in this dispute.... The Court's conclusion that Elbex was ready to file a lawsuit, but did not because of the representations of Tecton, is also supported by the fact that Elbex filed the New York action four days - only two business days - after the California Complaint was served. The Court notes that when the filing date difference between two parallel actions is de minimus, the Court has the discretion to disregard the first-filed doctrine altogether." Elbex Video Ltd. v. Tecton Ltd., 2000 WL 1708189 (S.D.N.Y. 2000). See Ontel, 899 F.Supp. at 1153 (holding that the first-filed rule is usually disregarded where the competing suits were filed merely days apart). Ontel further notes that "In cases where the first-filed action is deemed to have resulted from an anticipatory filing, the suit will generally be dismissed in favor of the second-filed action; consequently, the question of transfer, if reached, would be adjudicated by the court in which the second suit was brought, which would likewise provide the plaintiff in the second suit with the weight normally accorded a plaintiff's choice of forum." Ontel, 899 F.Supp at 1153.

## CONCLUSION

For all of the foregoing reasons and in the interests of justice, plaintiff respectfully requests that this Court deny Defendant's motion to dismiss in its entirety.

Dated: June 23, 2008

NICOLL, DAVIS & SPINELLA LLP
Attorneys for Plaintiff


By: /s/ Charles P. Guarino
    CHARLES P. GUARINO